FRFEIN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

OMID AREFI,

     *Plaintiff,*

     v.

MARCO RUBIO, *et al.*,

     *Defendants.*

Civil No.: 1:24-cv-02031-JRR

## MEMORANDUM OPINION

Pending before the court is Defendants' Motion to Dismiss.  (ECF No. 20; the "Motion.")

The court has reviewed all papers; no hearing is necessary.  Local Rule 105.6 (D. Md. 2025).  For

the reasons that follow, by accompanying order, the Motion will be granted in part and denied in

part.

## I.    BACKGROUND[1]

Plaintiff Omid Arefi initiated this action against the following Defendants: Secretary of

State (now Marco Rubio), Assistant Secretary of Consular Affairs (now Mora Namdar), and

Deputy Chief of Mission of U.S. Embassy in Islamabad, Pakistan (now Natalie A. Baker)

(collectively, "the State Department"); Secretary of Homeland Security[2] and Director of U.S.

Citizenship and Immigration Services ("USCIS") (now Joseph B. Edlow), and Director of the

Federal Bureau of Investigation (now Kash Patel) (hereinafter, the "FBI").[3]  Plaintiff seeks

injunctive relief to order Defendants to adjudicate his beneficiaries' Form I-730 Refugee/Asylee

Relative Petitions (the "I-730 petitions").  (ECF No. 1 at p. 8.)

---

[1] For purposes of resolving the Motion, the court accepts as true all well-pled facts set forth in the Complaint.  (ECF No. 1.)  *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017).

[2] According to national news media, Secretary Kristi Noem was relieved of her position on March 5, 2026.

[3] The individual public official Defendants have since changed as set forth herein.  Pursuant to Federal Rule of Civil Procedure 25(d), Madam Clerk shall substitute the individual Defendants accordingly.

### A. Plaintiff's Allegations

Plaintiff is a refugee in the United States who has lawful permanent resident status. (ECF No. 1 ¶¶ 2, 4.) Following approval of his refugee status, on February 14, 2023, Plaintiff filed four I-730 petitions for his spouse and three children who currently reside in Afghanistan. *Id.* ¶¶ 1, 4–5; ECF No. 20-1.) Just over three years have passed (about 37 months), and USCIS has yet to adjudicate the I-730 petitions. (ECF No. 1 ¶ 2; ECF No. 22 at p. 2.) He alleges that USCIS has displayed "inaction and delay" in adjudicating his I-730 petitions, despite having a "ministerial duty" to do so. (ECF No. 1 ¶¶ 3, 27.) "As a result of Defendants' unlawful actions, Plaintiff has suffered and continues to suffer the hardships of unreasonably and unlawfully delayed issuance of U.S. visas, including Mr. Arefi's severe anxiety over his spouse and children's safety, his inability to mentor and parent his children while living on another continent, and . . . severely negative psychological ramifications" for his family members. *Id.* ¶ 6.

Plaintiff alleges that USCIS and the State Department operate under a systematic delay in adjudicating immigrant visa applications due to an FBI "name check" process, wherein the FBI conducts what appears to be background checks on applicants. (ECF No. 1 ¶¶ 18, 19.) According to Plaintiff, the FBI name check process causes delays in adjudicating applicants, "including the ones submitted by [Plaintiff] for his spouse and children." *Id.* ¶ 20.

Plaintiff filed this action on July 12, 2024. (ECF No. 1.) He asserts two counts: Unreasonable Delay in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 555, 706(1); and for a Writ of Mandamus pursuant to 28 U.S.C. § 1361. (ECF No. 1 ¶¶ 22–29.) Plaintiff's claim under this court's mandamus authority is brought in the alternative. *Id.* at p. 8. Plaintiff asks this court to issue an order providing "injunctive relief requiring Defendants to complete immediately all steps necessary for adjudication of the . . . I-730 petitions." *Id.*

## B.  Relevant Legal Framework

By way of background, under the Immigration and Nationality Act ("INA"), "the Attorney General may, in [his] discretion and pursuant to such regulations as the Attorney General may prescribe, admit any refugee who is not firmly resettled in any foreign country, is determined to be of special humanitarian concern to the United States, and is admissible . . . ."  8 U.S.C. § 1157(c)(1).  It further provides that a spouse or child of a refugee who qualified for admission shall similarly, absent certain exceptions not applicable here, "be entitled to the same admission status as such refugee if accompanying, or following to join, such refugee and if the spouse or child is admissible . . . ."  *Id.* § 1157(c)(2).  Generally, within two years of a refugee's admission into the United States, he may request "following-to-join benefits" for his spouse and unmarried, minor children.[4]  8 C.F.R. § 207.7(d).  A refugee does this by filing a Form I-730 Refugee/Asylee Relative Petition with USCIS on behalf of a spouse or child.  *Id.*

> The I-730 petition has two distinct phases. First, USCIS must grant approval of the petition if the principal refugee establishes a qualifying relationship such as a spouse or unmarried minor child. 8 C.F.R. § 207.7(a), (d). Then, depending on where the principal refugee's family is located, USCIS will either make travel determinations about the family members or transition the petition to the State Department to make those same travel determinations. *Id.* § 207.7(f)(2); 9 [Foreign Affairs Manual ("FAM")] § 203.5-2(b)(3). In the countries where USCIS maintains a field office, there is no question that USCIS is responsible for the I-730 petition until it is denied, or until travel authorization is issued. 9 FAM § 203.5-2(b)(3). In countries where USCIS does not maintain a field office, it charges the State Department with making the travel eligibility determinations, while reserving the right to review any discrepancies in the petition. 8 C.F.R. § 207.7(f)(2); 9 FAM § 203.5-2(a)(6).

---

[4] Under the INA, a "child" refers to "an unmarried person under twenty-one years of age."  8 U.S.C. § 1101(b)(1).

*N.A. v. Jaddou*, No. 23-CV-01634-AJB-BGS, 2024 WL 1898470, at \*4 (S.D. Cal. Apr. 30, 2024); *see Maliki v. Rubio*, No. 5:24-CV-38-BO-KS, 2025 WL 510386, at \*2 (E.D.N.C. Feb. 14, 2025) (discussing same).

Once USCIS approves an I-730 petition, it then "will send the approved request to the State Department for transmission to the U.S. Embassy or Consulate having jurisdiction over the area in which the refugee's spouse or child is located." 8 C.F.R. § 207.7(f)(2). There is no dispute here that USCIS bears sole responsibility for adjudicating the I-730 Petition. (ECF No. 20-1 at p. 3; ECF No. 22 at p. 2.) *See, e.g.*, *Mohamed v. Jaddou*, No. CV 23-902 (JRT/LIB), 2024 WL 477098, at \*3 (D. Minn. Feb. 7, 2024) (recognizing that the Department of Homeland Security "through its subsidiary USCIS, maintains control over the entire adjudication of I-730 petitions"); *N.A.*, 2024 WL 1898470, at \*5 (discussing same); *Shougar v. Jaddou*, No. 23-CV-01723-NYW, 2024 WL 3069273, at \*5 (D. Colo. June 20, 2024) (discussing same).

## II.    LEGAL STANDARD

### A.  Federal Rule of Civil Procedure 12(b)(1)

"Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes dismissal for lack of subject matter jurisdiction." *Barnett v. United States*, 193 F. Supp. 3d 515, 518 (D. Md. 2016). Subject matter jurisdiction challenges may proceed as "either a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting 'that the jurisdictional allegations of the complaint [are] not true.'" *Mayor & City Council of Balt. v. Trump*, 416 F. Supp. 3d 452, 479 (D. Md. 2019) (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)).

In a facial challenge, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction."

*Kerns*, 585 F.3d at 192; *see Ministry of Defence of State of Kuwait v. Naffa*, 105 F.4th 154, 159 (4th Cir. 2024) (same).  Conversely, in a factual challenge, "the presumption of truthfulness normally accorded a complaint's allegations does not apply, and the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns*, 585 F.3d at 192; *see Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 650 (4th Cir. 2018) (same). "In that circumstance, the court 'may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.'" *Trump*, 416 F. Supp. 3d at 479 (quoting *Velasco v. Gov't of Indon.*, 370 F.3d 392, 398 (4th Cir. 2004)).

"Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes dismissal for lack of subject matter jurisdiction." *Barnett v. United States*, 193 F. Supp. 3d 515, 518 (D. Md. 2016). "The plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence." *United States ex rel. Fadlalla v. DynCorp Int'l LLC*, 402 F. Supp. 3d 162, 176 (D. Md. 2019) (citing *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999)). "In determining whether jurisdiction exists, 'the court may look beyond the pleadings and the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue.'" *Id.* at 176 (quoting *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003)).

Subject matter jurisdiction challenges may proceed in two ways: "either a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting 'that the jurisdictional allegations of the complaint [are] not true.'" *Mayor & City Council of Baltimore v. Trump*, 416 F. Supp. 3d 452, 479 (D. Md. 2019) (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)).  In a facial challenge, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint

alleges sufficient facts to invoke subject matter jurisdiction." *Kerns*, 585 F.3d at 192; *see Ministry of Defence of State of Kuwait v. Naffa*, 105 F.4th 154, 159 (4th Cir. 2024) (same). Conversely, in a factual challenge, "the presumption of truthfulness normally accorded a complaint's allegations does not apply, and the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns*, 585 F.3d at 192. "In that circumstance, the court 'may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.'" *Trump*, 416 F. Supp. 3d at 479 (quoting *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004)). Defendants here asset a facial challenge to the court's subject matter jurisdiction, averring that Plaintiff has failed to plead facts to support his standing as to his claims against the FBI and the State Department.[5] (ECF No. 20-1 at pp. 7–9.)

### B. Federal Rule of Civil Procedure 12(b)(6)

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint." *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017), *as amended* (Jan. 20, 2017) (quoting *Papasan v. Allain*, 478 U.S. 265, 283 (1986)). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

---

[5] Defendants also argue that this matter is not ripe because Plaintiff has failed to respond to USCIS-issued Requests for Evidence ("RFEs") regarding the I-730 petitions. (ECF No. 20-1 at pp. 9–10.) In support, Defendants supply the RFEs (ECF No. 20-3) and a declaration from Trina Swanson, Director of International Operations within the Refugee and International Operations District, within the International and Refugee Affairs Division, within the Refugee, Asylum and International Operations Directorate of USCIS (ECF No. 20-4), who attests that USCIS issued RFEs. *Id.* ¶ 4. In her declaration, she attests that USCIS received responses from Plaintiff for two of the RFEs, and did not receive responses for the other two. *Id.* ¶¶ 3–6. By USCIS's own admission, it has proceeded in its adjudication of at least two of the I-730 petitions. *Id.* ¶ 8. The court acknowledges counsel's assertion that it would make little sense to adjudicate these petitions separately, but counsel's assessment is not persuasive against Swanson's attestation. In any event, even if Plaintiff's I-730 petitions are stalled due to RFEs, the court is not persuaded that that would mean no dispute is ripe (*i.e.*, meaning there is not yet a case or controversy), but instead would bear on the merits of Plaintiff's claims as to the reasonableness of delay in adjudication.

(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A court decides whether this standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer that 'the defendant is liable for the misconduct alleged.'" *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) (citing *Iqbal*, 556 U.S. at 678).

A plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level, thereby nudging its claims across the line from conceivable to plausible." *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 543 (4th Cir. 2013) (citation modified) (quoting *Twombly,* 550 U.S. at 555, 570). The plausibility requirement is not "a probability requirement but rather a mandate that a plaintiff 'demonstrate more than a sheer possibility that a defendant has acted unlawfully." *In re Birmingham*, 846 F.3d at 92 (quoting *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009)). Reliance on "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" are insufficient. *Twombly*, 550 U.S. at 555.

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court generally does not consider evidence outside of a complaint. The court may, however, properly consider "documents integral to and relied upon in the complaint, . . . so long as the plaintiff does not question their authenticity." *Fairfax v. CBS Corp.*, 2 F.4th 286, 292 (4th Cir. 2021). "An integral document is a document that by its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d. 602, 611 (D. Md. 2011) (quoting *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 806 (E.D. Va. 2007)). The court is entitled to "consider documents that are explicitly incorporated into the complaint by reference, and those attached to the complaint as exhibits" as part of the "pleading for all purposes." *Goines v. Valley Comm. Svcs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016) (first

citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007); then citing FED. R. CIV. P. 10(c)); FED. R. CIV. P. 10(c) (pertaining to "written instruments" attached as exhibits to a pleading).  Finally, the court may also "properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts,'" meaning a fact "not subject to reasonable dispute because it," *inter alia*, "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015) (quoting *Philips v. Pitt Cnty. Mem'l Hosp.,* 572 F.3d 176, 180 (4th Cir. 2009)); FED. R. EVID. 201(b).

Defendnats offer multiple exhibits in support of their Motion, including the I-730 petitions at issue (ECF No. 20-2), the Requests for Evidence ("RFEs") sent by USCIS pertaining to each petition (ECF No. 20-3), and a Declaration from Trina Swanson, the Director of International Operations within the Refugee and International Operations District, within the International and Refugee Affairs Division, within the Refugee, Asylum and International Operations Directorate of USCIS (ECF No. 20-4).  The court agrees that the I-730 Petitions are integral to the Complaint, and the court may consider same, as Plaintiff does not challenge their authenticity.  Defendants do not otherwise persuasively argue that the other exhibits—the RFEs and Swanson Declaration— are integral to Plaintiff's Complaint or properly considered on the Rule 12(b)(6) motion.[6]  The court therefore declines to consider them in ruling on the instant Motion.

---

[6] Defendants argue that the RFEs are "integral to a party's defense" and thus should be considered, citing opinions from the Third Circuit and the Western District of North Carolina.  (ECF No. 20-1 at p. 6.)  Both opinions arose from cases where the defendants had answered the complaints and then moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  Defendants here have not yet answered and instead move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).

III.    **ANALYSIS**[7]

Defendants mount both jurisdictional and plausibility challenges to Plaintiff's asserted claims against the relevant parties.  The court turns first to Defendnats' standing challenges, which bear on this court's jurisdiction, before turning to Defendants' Rule 12(b)(6) arguments.

**A. Standing Arguments**

Defendants first argue that Plaintiff fails to allege facts to demonstrate standing to sue the FBI and State Department because he does not allege injury traceable to either.  (ECF No. 20-1 at pp. 7–8.)   The Constitution extends the judicial power of Article III courts to "cases" or "controversies."   U.S. CONST. ART. III, § 2, cl. 1.   The doctrine of standing, among others, "implements" this limit.  *Carney v. Adams*, 592 U.S. 53, 58 (2020).  To establish standing:

> First, the plaintiff must have suffered an injury in fact that is both concrete and particularized and actual or imminent, not conjectural or hypothetical. Second, the plaintiff's injury must be fairly traceable to the challenged action of the defendant, meaning that there must be a causal connection between the injury and the conduct complained of. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Dep't. of Educ v. Brown*, 600 U.S. 551, 561 (2023) (citations omitted) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).  Plaintiff bears the burden to establish his standing.  *Lujan*, 504 U.S. at 561.

Relevant here, the traceability element "ensures that it is likely the plaintiff's injury was caused by the challenged conduct of the defendant, and not by the independent actions of third

---

[7] This court is mindful of its obligation to construe liberally the pleadings of self-represented litigants. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "In practice, this liberal construction allows courts to recognize claims despite various formal deficiencies, such as incorrect labels or lack of cited legal authority." *Wall v. Rasnick*, 42 F.4th 214, 218 (4th Cir. 2022). Such liberal construction, however, does not absolve Plaintiff from pleading a plausible claim, and this court "may not act as an advocate for a self-represented litigant" by "conjur[ing] up" issues not presented. *Desgraviers v. PF-Frederick, LLC*, 501 F. Supp. 3d 348, 351 (D. Md. 2020) (quoting *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 314 (D. Md. 2014), *aff'd*, 584 F. App'x 135 (4th Cir. 2014); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)).

parties not before the court." *Sheppheard v. Morrisey*, 143 F.4th 232, 243 (4th Cir. 2025) (quoting *Friends for Ferrell Parkway, LLC v. Stasko*, 282 F.3d 315, 320 (4th Cir. 2002)). Its focus is "whether the allegations in the complaint[] have established 'a causal connection between the injury and the conduct complained of,' such that the injury is 'fairly traceable' to the defendant's actions." *Lowy v. Daniel Def., LLC*, 167 F.4th 175, 195 (4th Cir. 2026) (quoting *Lujan*, 504 U.S. at 560).

Defendants argue that Plaintiff fails to allege facts to support a link between his injury—lack of adjudication of his I-730 petitions—and the alleged actions of the FBI and State Department. The court agrees as to both. First, as to the FBI, the alleged causal connection between Plaintiff's injury and the FBI in entirely speculative—that the FBI "name check" process causes delays in adjudicating petitions, and thus it thereby caused the delay here. Such allegation, assumed as true, is insufficient to support the requisite causal connection, especially where Plaintiff acknowledges that USCIS is the sole entity responsible for adjudicating the I-730 petitions and that its delay caused his injury. *See Lujan*, 504 U.S. at 560, *supra*; ECF No. 22 at pp. 2–3.

Second, Plaintiff similarly fails to plead facts essential to support the requisite causal connection between his alleged injury and the State Department. Plaintiff alleges no specific facts supporting the State Department's involvement in the delay in adjudication of the I-730 petitions. He thus fails to plead facts that might reasonably allow for the conclusion that the delay in adjudicating the I-730 petitions is fairly traceable to actions specifically of the State Department. *See Lowy*, 167 F.4th at 195 and *Lujan*, 504 U.S. at 560, *supra*.[8]

---

[8] Even were the court to conclude Plaintiff had adequately shown standing, for these same reasons, Plaintiff has failed to state a plausible claim that either the FBI or State Department has unreasonably delayed in adjudicating his I-730 petitions.

### B.  Unreasonable Delay Claims under the APA and Mandamus Act

"[T]he APA does not permit judicial review of a challenge to 'agency action [that] is committed to agency discretion by law.'"  *Lovo v. Miller*, 107 F.4th 199, 210 (4th Cir. 2024) (quoting 5 U.S.C. § 701(a)(2)).  "Under § 706, we may only compel 'agency action' that has been 'unlawfully withheld or unreasonably delayed.'"  *Gonzalez v. Cuccinelli*, 985 F.3d 357, 365 (4th Cir. 2021) (quoting 5 U.S.C. § 706(1)).  A claim that an agency action is unreasonably delayed "can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required* to take."  *Lovo*, 107 F.4th at 210 (emphasis in original) (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004)).  "But where an agency is *not required* to do something, [courts] cannot compel the agency to act—let alone to act faster."  *Gonzalez*, 985 F.3d at 366 (emphasis in original).

"Similar to the APA, the Mandamus Act only permits federal courts to exercise jurisdiction if an agency has a clear duty to act."  *Lovo*, 107 F.4th at 216; *see Ishaq v. Schofer*, No. 8:24-CV-00207-TJS, 2024 WL 3729107, at *3 (D. Md. Aug. 8, 2024) (noting that "[m]andamus can be used only to compel ministerial acts of federal government officers, not discretionary duties") (citing *Asare v. Ferro*, 999 F. Supp. 657, 659 (D. Md. 1998)).

Relevant here, Defendants do not challenge that they have a non-discretionary duty to adjudicate Petitioner's I-730 petitions under the APA and Mandamus Act; nor do they challenge Plaintiff's allegation that they have "a ministerial duty . . . to adjudicate the visa applications." (ECF No. 1 ¶ 27.)  *See also N.A. v. Jaddou*, No. 23-CV-01634-AJB-BGS, 2024 WL 1898470, at *8 (S.D. Cal. Apr. 30, 2024) (finding the plaintiff pled a failure by the defendants to take nondiscretionary action with regard to the I-730 petition).

The court thus turns to Defendants' challenges to the sufficiency of Plaintiff's allegations of unreasonable delay.  (ECF No. 20-1 at p. 11–16.)  Because "[t]he standard by which a court reviews . . . agency inaction is the same under both § 706(1) of the APA and the Mandamus Act," *see Jahangiri v. Blinken*, No. CV DKC 23-2722, 2024 WL 1656269, at *14 (D. Md. Apr. 17, 2024) (quoting *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 96 (D.D.C. 2020)); *see also Ishaq*, 2024 WL 3729107, at *3, the court considers the sufficiency of both of Plaintiff's claims together, *see Logan v. Blinken*, No. CV 21-2275 (FYP), 2022 WL 3715798, at *4 (D.D.C. Aug. 29, 2022) (noting that "[b]ecause 'the standard for undue delay under the Mandamus Act . . . is identical to the APA standard,' the Court treats the two claims as one") (quoting *Kangarloo v. Pompeo*, 480 F. Supp. 3d 134, 142 (D.D.C. 2020)).

The APA, 5 U.S.C. § 555(b), provides that an agency "within a reasonable time . . . shall proceed to conclude a matter presented to it."  5 U.S.C. § 555(b).  A claim brought pursuant to 5 U.S.C. § 706(1) "can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take."  *Norton*, 542 U.S. at 64; *see* 28 U.S.C. § 1361 (providing under the Mandamus Act that "district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff").  "If an agency fails to comply with this requirement, the APA authorizes courts to 'compel agency action unlawfully withheld or unreasonably delayed . . . .'"  *Begum v. U.S. Dep't of State*, No. 1:22-CV-00478-JMC, 2022 WL 16575703, at *5 (D. Md. Oct. 31, 2022) (quoting 5 U.S.C. § 706(1)).

In assessing claims of agency unreasonable delay, courts generally consider six factors as set forth by the D.C. Circuit in *Telecommunications Research & Action Center v. F.C.C.*, 750 F.2d 70 (D.C. Cir. 1984) ("*TRAC*"):

> (1) the time agencies take to make decisions must be governed by a rule of reason;
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
>
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
>
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Id.* at 80 (citations omitted).

While a "claim of unreasonable delay is necessarily fact dependent and thus sits uncomfortably at the motion to dismiss stage and should not typically be resolved at that stage," *see Gonzalez v. Cuccinelli*, 985 F.3d 357, 375 (4th Cir. 2021), a plaintiff does not automatically "survive[] a motion to dismiss by merely alleging that a processing delay is unreasonable." *Ahmed v. U.S. Dep't of Homeland Sec.*, No. 21-CV-893 (APM), 2022 WL 424967, at *5 (D.D.C. Feb. 11, 2022). His pleading is "still subject to the standard for pleadings under *Twombly* and *Iqbal*," and the court therefore must determine whether his complaint alleges facts sufficient "to state a plausible claim for unreasonable administrative delay." *Id.* (quoting *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 50 (D.D.C. 2021)). As such, courts routinely consider whether a plaintiff states a claim of unreasonable delay under the APA on a motion to dismiss. *See, e.g.*, *Aghamohammadi v. Rubio*, No. CV DKC 24-2801, 2025 WL 2687343, at *11 (D. Md. Sept. 19, 2025) (citing cases); *Mokuolu v. Mayorkas*, No. CV RDB-24-817, 2024 WL 4783542, at *2 (D. Md. Oct. 1, 2024);

*Jahangiri v. Blinken*, No. CV DKC 23-2722, 2024 WL 1656269, at *1 (D. Md. Apr. 17, 2024) (citing cases); *Begum*, 2022 WL 16575703, at *1; *Ahmed*, 2022 WL 424967, at *1.

Notwithstanding that courts may consider the *TRAC* factors on a motion to dismiss, the court declines to undertake the full analysis here where Defendants have not met their burden to show that the *TRAC* factors weigh decisively in their favor such that Plaintiff has failed to allege a plausible unreasonable delay claim. The record before the court supports that the third and fifth factors likely weigh in Plaintiff's favor, as the delay has allegedly caused him to be separated from his spouse and minor children while he experiences significant fear regarding their safety, *see Dennis v. Blinken*, No. 1:22-CV-02522-JRR, 2023 WL 4764576, at *8 (D. Md. July 26, 2023) (citing cases), and that the sixth factor is likely neutral, as Plaintiff does not allege impropriety, *see Jahangiri*, 2024 WL 1656269. However, it is not apparent that three important factors—the first, second, and fourth—plainly fall in Defendants' favor. *See Mokuolu*, 2024 WL 4783542, at *6 (noting that "[s]ome courts have deemed the first *TRAC* factor the 'most important' of the *TRAC* analysis"); *Begum*, 2022 WL 16575703, at *8 (noting the fourth factor carries significant weight).

Plaintiff's I-730 petitions have now been pending for about 37 months, and yet they are still seemingly in the first phase of adjudication. Plaintiff alleges that Defendants offer (and have) no reason for the delay, and Defendants offer none.[9] While "delays between three and five years are typically not unreasonable," *see Mokuolu*, 2024 WL 4783542, at *7 (citing cases), it does not follow that Plaintiff cannot plausibly allege unreasonable delay where Defendants do not offer any authority, support, and rule of reason to justify same.[10] *See, e.g.*, *Hasnat v. Rubio*, No. CV SAG-

---

[9] See footnote 6, *supra*.

[10] The court acknowledges that Defendants rely on a general website to support that "[g]enerally, USCIS processes Form I-730 petitions in the order [it] receive[s] them." *See* U.S. CITIZENSHIP AND IMMIGR. SERVS., *I-730, Refugee/Asylee Relative Petition* (2025), https://www.uscis.gov/i-730 [https://perma.cc/BC5W-8ZJF].

24-02175, 2025 WL 675221, at *4 (D. Md. Mar. 3, 2025) (discussing the evidence provided by defendants regarding "the history of the massive backlog, the effects that different approaches to interview scheduling have had on the size of the backlog, the agency's historical and ongoing challenges with staffing and funding, and the effect that court cases have had on the agency's prioritization efforts, among other factors"); *Mokuolu*, 2024 WL 4783542, at *7 (discussing the average processing times for VAWA self-petitions); *Jahangiri*, 2024 WL 1656269, at *12 (discussing caselaw finding various delays in K-1 visa applications not unreasonable). This same reasoning is applicable to consideration of the fourth factor; this proffered rationale for the delay certainly informs whether Plaintiff's request would require a court order that would essentially put him at the head of the queue and move others back. *See Jahangiri*, 2024 WL 1656269, at *11.

Based on the foregoing, the court is satisfied Plaintiff adequately pleads that Defendants have unreasonably delayed in adjudication of his I-730 petitions. The court will therefore deny the Motion on that basis. Defendants, of course, remain free to assert their arguments on summary judgment.

## IV.    CONCLUSION

For the reasons set forth herein, by separate order, Defendants' Motion (ECF No. 20) will be granted in part and denied in part.


Date: March 13, 2026                          /S/

                                              _____
                                              Julie R. Rubin
                                              United States District Judge